**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| PATRICIA MANGELS, on behalf of herself and all others similarly situated, | Civil Action No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| TWININGS NORTH AMERICA, INC., | |
| Defendant. | |

**COME NOW**, Plaintiff Patricia Mangels ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Defendant Twinings North America, Inc. ("Defendant" or "Twinings"). Plaintiff makes the following allegations upon personal knowledge as to her own acts and experiences, and upon information and belief and the investigation of counsel as to all other matters.

## INTRODUCTION

1.      This is a consumer protection class action arising out of Defendant's false and misleading advertising of its Twinings bagged tea products (the "Products").[1]

2.      During the relevant class period, Defendant, directly and/or through its agents, has manufactured, packaged, and sold the Products. The Products are sold through third party retailers such as CVS, grocery stores, and Amazon.com.

3.      During the relevant class period, Defendant has sold the Products with representations that indicate the Products are from England. Each of the Products bear three, identical representations: (1) the "Twinings of London" brand name; (2) the following address in London, England: "216 The Strand, London WC2, England"; and (3) the following representation

---

[1] The Products are more fully defined in Paragraph 21.

above the Twinings of London brand name: "By Appointment To Her Majesty Queen Elizabeth II Tea and Coffee Merchants R. Twining and Company Limited, London" (collectively, the "England Representations").

4.    Based on the England Representations, reasonable consumers of the Products, including Plaintiff, believed that the Products are from England. However, unbeknownst to those consumers, the Products are not from England. Defendant's packaging of the Products is therefore false and misleading.

5.    Defendant's conduct harms consumers by inducing them to purchase the Products at a price premium on the false premise that the Products are from England.

6.    Plaintiff and other consumers would not have otherwise purchased the Products or would have paid substantially less for them had they known the truth.

7.    As a result of Defendant's false and deceptive packaging, Plaintiff and other members of the proposed Class have purchased Products they otherwise would not have purchased or have paid more for the Products than they otherwise would have paid. Therefore, Plaintiff and other members of the Class have been injured.

8.    Plaintiff now brings this action individually and on behalf of the members of the proposed Class (defined *infra*) to stop Defendant's unlawful practices, to seek injunctive relief, and for such monetary relief and additional relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

9.    The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, this is a class action in which there are more than 100 Class members, and at least some Class members are citizens of states different from Defendant.

10.     This Court has personal jurisdiction over Defendant because Defendant intentionally avails itself of the markets in Missouri through the promotion, marketing, and sale of the Products in Missouri to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)(1) because a substantial part of the events and omissions giving rise to these claims occurred in this District. Plaintiff Mangels resides, and purchased the Products, in this District.

## PARTIES

12.     Plaintiff Patricia Mangels is a citizen of the State of Missouri, and at all times relevant to this action, resided in Bunceton, Missouri. In or around January 2021, Ms. Mangels purchased the Twinings Earl Grey Product from a Walmart in Boonville, Missouri. In purchasing the Product, Ms. Mangels saw and relied on the England Representations on the Product's front packaging, reasonably expecting that the Product was from England. Had Ms. Mangels known that the Product was not from England, she would not have purchased it or would have paid significantly less for it. Therefore, as a direct result of Defendant's false and deceptive conduct, Ms. Mangels suffered injury-in-fact and lost money.

13.     Despite being misled by Defendant, Plaintiff wishes to and are likely to continue purchasing the Products in the future. Although Plaintiff would like to purchase the Products, absent an injunction prohibiting the deceptive packaging and advertising described herein, she will be unable to rely with confidence on Defendant's packaging of the Products in the future and will therefore abstain from purchasing the Products, even though she would like to purchase them. Furthermore, while Plaintiff currently believes the Products are not from England, she lacks personal knowledge as to Defendant's specific business practices, leaving doubt in her mind as to

the possibility that at some point in the future the Products could be from England. This uncertainty, coupled with her desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the misleading representations alleged herein. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing that they are from England when they are not. Thus, monetary damages alone are insufficient to remedy the harm in this action.

14. Defendant Twinings North America, Inc. is a Delaware corporation headquartered in Clifton, New Jersey. Defendant, directly and/or through its agents, is responsible for the formulation, manufacturing, brewing, packaging, marketing, distributing, and sale of the Products nationwide, including in Missouri.

## **FACTUAL ALLEGATIONS**

A. **England Is Renowned For Their Expertise In Tea, Which Twinings Exploits**

15. There is a strong connection between England and tea.

16. Historical events such as the London Tea Auction, which served as the "centre of the world's tea industry" synonymized England with expertise in tea processing and manufacturing.[2]

17. Consumers today still demand British tea. "Such is the British enthusiasm for tea that even after the dismantling of the Empire, British companies continue to play a leading role in the world's tea trade and British brands dominate the world market."[3]

18. Twinings is one of these brands which dominates the world market. While Twinings was founded in London in 1706 and was exporting tea to the United States by 1749,[4] the

---

[2] UK Tea & Infusions, *The History of Tea*, https://www.tea.co.uk/history-of-tea (last visited July 16, 2021).
[3] *Id.*
[4] Twinings, *History*, https://twiningsusa.com/pages/about (last visited July 16, 2021).

tea is no longer from England. Rather, while British consumers can continue to enjoy Twinings tea from England (Twinings maintains a British factory for the British market), Twinings tea sold outside of England is now from China and Poland.[5]

19.     Despite the tea no longer being from England, Twinings continues to capitalize on its English association by prominently advertising the England Representations on each of the Products.[6]

20.     An example of Twinings Earl Grey Product, including the England Representations, is portrayed below:

[5] Julia Finch, *Twinings Axes 400 Jobs*,
https://www.theguardian.com/business/2009/nov/03/twinings-tea-job-cuts (last visited July 7, 2021).
[6] The "Products" include all Twinings packaged tea bag products and expressly exclude Twinings Loose Leaf tea and Twinings Cold Infuse Flavoured Cold Water Enhancer products.





21.    As demonstrated above, Defendant prominently displays the following representations on the front packaging of all the Products: (1) the "Twinings of London" brand name; (2) the following address in London, England: "216 The Strand, London WC2, England"; and (3) the following representation above the Twinings of London brand name: "By Appointment To Her Majesty Queen Elizabeth II Tea and Coffee Merchants R. Twining and Company Limited, London". These representations, individually and in their totality, communicate a specific message to consumers: The Products are from England.

22.    The Products are deceptively advertised with the England Representations to target consumers who are interested in purchasing teas from England.

23.    Based on the England Representations, Plaintiff reasonably believed the Products were from England, but they were not.

24.    Plaintiff would not have purchased the Products, or would have paid less for the Products, had she known they were not from England.

25.    The Product that Plaintiff received was worth less than the Product for which she paid given their false and misleading misrepresentations.

**B.     Plaintiff and Class Members Were Deceived and Injured**

26.    Plaintiff and other Class members have been, and will continue to be, deceived or misled by Defendant's false and deceptive packaging of the Products.

27.    Plaintiff and other Class members purchase, and pay a premium for, the Products based on the England Representations, reasonably believing that the Products are from England.

28.    Reasonable consumers did not know, and had no reason to know, that the Products were, and continue to be, falsely and deceptively packaged.

29.    As a result of the foregoing, reasonable consumers would expect that the Products were from England.

30.    The false belief created by Defendant's Products' packaging is a material factor in influencing consumer purchase decisions because it relates to the contents of the Products, specifically the geographical location where they were from. To the detriment of consumers, Defendant's packaging entices consumers to pay for what they believe is tea from England.

31.    As the entity responsible for the development, manufacturing, processing, advertising, and sale of the Products, Defendant knew that the Products were not from England, but nevertheless intentionally maintained the England Representations on the Products.

32.    Defendant knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on the England Representations and would therefore reasonably believe that the Products were from England.

33.    Had Plaintiff and the Class members known the truth about the Products, they would not have purchased the Products, or would not have paid the prices they paid for the Products.

34.    Plaintiff and Class members were all harmed by purchasing Defendant's Products because they did not receive what they paid for, and, as a result, lost money and property.

35.    Each Class member has been exposed to the same or substantially similar deceptive practice, as each of the Products sold during the class periods were advertised with the England Representations on their front packaging.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3), brings this action on behalf of the following (the "Class"):

a.    The "**Missouri Subclass**": All persons who, within the relevant statute of limitations period, purchased any of the Products for personal, family, or household purposes in the state of Missouri.

37.    Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers,

and directors; all persons who make a timely election to be excluded from the Class; the judge to whom this case is assigned and any immediate family members thereof; and any persons who assert claims for personal injury.

38.     Plaintiff reserves the right to modify or amend the definition of the proposed Class after having had an opportunity to conduct discovery.

39.     Plaintiff Mangels is a member of the Missouri Subclass.

40.     **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. Defendant has sold at least thousands of packages of the Products to Class members. There are likely at least thousands of Class members.

41.     **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.     Whether the representations discussed herein that Defendant made about the Products were or are false, misleading, or likely to deceive a reasonable consumer;

    b.     Whether the representations discussed herein were material to a reasonable consumer;

    c.     Whether Defendant's conduct violates public policy;

    d.     Whether Defendant's conduct constitutes violations of the laws and/or regulations asserted herein;

    e.     Whether Plaintiff and the other Class members have been injured and the proper measure of their losses as a result of those injuries; and

    f.     Whether Plaintiff and the other Class members are entitled to injunctive,

declaratory, or other equitable relief.

42. **Typicality.** Plaintiff's claims are typical of those of the other Class members because, among other things, Plaintiff and all Class members were injured in a similar manner through the uniform conduct by Defendant described herein.

43. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members Plaintiff seeks to represent. In addition, Plaintiff has retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of the Class, and the interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

44. **Declaratory and Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

45. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
**Violation of Missouri's Merchandising Practices Act ("MMPA")**
(*on behalf of the Missouri Subclass*)

46.     Plaintiff Mangels re-alleges and incorporates Paragraphs 1-45 as if fully set forth herein.

47.     Plaintiff Mangels brings this claim individually and on behalf of the Missouri Subclass.

48.     The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." Mo. Rev. Stat. § 407.020.1.

49.     The Products are "merchandise" pursuant to Mo. Rev. Stat. § 407.010(4), and Defendant is selling the Products in trade or commerce.

50.     As demonstrated above, Defendant's packaging and advertising constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices in connection with the sale or advertisement of the Products in that Defendant falsely and deceptively advertised the Products in a manner which misleads reasonable consumers into believing the Products are from England, when they are not.

51.     Defendant's misrepresentations regarding the Products are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the contents of the Products, specifically the geographical location where they are from.

11

52.     At all relevant times, Defendant knew or reasonably should have known the fact that the Products were not from England, and that Plaintiff Mangels and other members of the Missouri Subclass would reasonably and justifiably rely on the England Representations in purchasing the Products.

53.     Plaintiff Mangels and other members of the Missouri Subclass purchased the Products for personal, family, or household purposes.

54.     Plaintiff Mangels and other members of the Missouri Subclass reasonably and justifiably relied on Defendant's misleading and fraudulent packaging of the Products when purchasing them.

55.     Plaintiff Mangels and other members of the Missouri Subclass have suffered an ascertainable loss caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products, had they known that Defendant's conduct was misleading and fraudulent.

56.     Defendant's conduct was intentional, wrongful, and malicious and entitles Plaintiff Mangels and other members of the Missouri Subclass to the recovery of punitive damages as authorized by statute. Mo. Rev. Stat. § 407.025.1.54.

57.     In addition, Defendant's conduct has caused Plaintiff Mangels and other members of the Missouri Subclass irreparable injury.  As described herein, Defendant has engaged in unlawful and misleading conduct on a routine and automated basis, harming Class members in a uniform manner.  Unless restrained and enjoined, Defendant will continue such conduct. Therefore, Plaintiff Mangels and other members of the Missouri Subclass request injunctive relief, and such other equitable relief as the Court deems just and proper.

**COUNT II**
**Breach of Express Warranty**
**Mo. Stat. § 400.2-313**
(*on behalf of the Missouri Subclass*)

58.     Plaintiff Mangels re-alleges and incorporates Paragraphs 1-45 as if fully set forth herein.

59.     Plaintiff Mangels brings this claim individually and on behalf of the Missouri Subclass.

60.     Missouri's express warranty statute provide that: "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  Mo. Stat. § 400.2-313.

61.     Plaintiff Mangels and members of Missouri Subclass formed a contract with Defendant at the time they purchased the Products. Defendant has placed the England Representations on each of the Products' packaging, expressly warranting that the Products are from England. These representations: (1) are affirmations of fact or promises made by Defendant to consumers that the Products are from England; (2) became part of the basis of the bargain to purchase the Products when Plaintiff Mangels and other Missouri Subclass members relied on the representations; and (3) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created express warranties that the Products would conform to the product descriptions.

62.     Plaintiff Mangels and members of Missouri Subclass reasonably and justifiably

relied on the foregoing express warranties, believing that Products did in fact conform to the warranties.

63.     All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff Mangels and members of Missouri Subclass.

64.     Defendant has breached the express warranties made to Plaintiff and members of Missouri Subclass by failing to provide Products from England.

65.     Plaintiff Mangels and members of Missouri Subclass paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of Missouri Subclass had known of the true nature of the Products, they would not have purchased them or would have paid significantly less for them.

66.     As a result of Defendant's breach of express warranties, Plaintiff Mangels and members of Missouri Subclass suffered injury and deserve to recover all damages afforded under the law.

<u>**COUNT III**</u>
**Breach of Implied Warranty of Merchantability**
**Mo. Stat. § 400.2-314**
(*on behalf of the Missouri Subclass*)

67.     Plaintiff Mangels re-alleges and incorporates Paragraphs 1-45 as if fully set forth herein.

68.     Plaintiff Mangels brings this claim individually and on behalf of the Missouri Subclass.

69.     Missouri's implied warranty law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mo. Stat. § 400.2-314(1).

70.     Missouri's implied warranty law also states that "[g]oods to be merchantable must

be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Mo. Stat. § 400.2-314(2)(f).

71.     Defendant is a merchant with respect to the sale of packaged tea products, including the Products at issue here. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to Missouri Subclass members

72.     By advertising the Products with their current containers (packaging), which include the England Representations on the front portion of each Products' package, Defendant made an implied promise that each of the Products are from England. By not providing Products from England, Defendant has not "conformed to the promises . . . made on the container" of the Products. Plaintiff and members of the Missouri Subclass did not receive the goods as impliedly warranted by Defendant to be merchantable.

73.     Therefore, the Products are not merchantable under the law and Defendant has breached its implied warranty of merchantability in regard to the Products.

74.     If Plaintiff Mangels and other members of the Missouri Subclass had known of the true nature of the Products, they would not have purchased them or would have paid significantly less for them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff Mangels and other members of the Missouri Subclass have suffered injury and deserve to recover all damages afforded under the law.

<u>COUNT IV</u>
**Common Law Fraud**
(*on behalf of the Missouri Subclass*)

75.     Plaintiff Mangels re-alleges and incorporates Paragraphs 1-45 as if fully set forth herein.

76.     Plaintiff Mangels brings this claim individually and on behalf of the Missouri

Subclass.

77.     Defendant has willfully, falsely, and knowingly packaged the Products with the England Representations, informing consumers that the Products are from England. Despite this, however, the Products are not from England. Therefore, Defendant has made intentional misrepresentations as to the Products.

78.     Defendant's misrepresentations are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the contents of the Products, specifically the geographical location where they are from.

79.     Defendant knew or recklessly disregarded the fact that the Products are not from England.

80.     Defendant intended that Plaintiff Mangels and other consumers rely on the misleading representations, as the representations are made conspicuously on the front of the packaging of each of the Products.

81.     Plaintiff Mangels and members of the Missouri Subclass have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

82.     Therefore, as a direct and proximate result of Defendant's fraud, Plaintiff Mangels and members of the Missouri Subclass have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT V**
**Unjust Enrichment/Quasi-Contract**
(*on behalf of the Missouri Subclass*)

83. Plaintiff Mangels re-alleges and incorporate Paragraphs 1-45 as if fully set forth herein.

84. Plaintiff Mangels brings this claim individually and on behalf of the Missouri Subclass.

85. At all times relevant hereto, Defendant deceptively marketed, advertised, and sold the Products to Plaintiff Mangels and the members of the Missouri Subclass in a manner which misleads consumers into believing the Products are from England when they are not.

86. Plaintiff Mangels and the members of the Missouri Subclass conferred upon Defendant non-gratuitous payments for the Products that they would not have if not for Defendant's deceptive packaging of the Products. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff Mangels and the members of the Missouri Subclass, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff Mangels and the members of the Missouri Subclass were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

87. Defendant has been unjustly enriched in retaining the revenues derived from purchases of the Products by Plaintiff Mangels and the members of the Missouri Subclass. Defendant's retention of that benefit under these circumstances is unjust and inequitable because Defendant misrepresented, among other things, that its Products possessed a characteristic that the Products did not, in fact, possess. Defendant's misrepresentations caused injuries to Plaintiff Mangels and the members of the Missouri Subclass because they paid a price premium due to the misleading advertising.

17

88.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff Mangels and the members of the Missouri Subclass under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiff Mangels and the members of the Missouri Subclass for unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the proposed Class, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.     Certifying the Class as requested herein, designating Plaintiff as the class representative and appointing the undersigned counsel as class counsel;

B.     Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.     Ordering restitution and disgorgement of all profits and unjust enrichment Defendant obtained from Plaintiff and the Class as a result of Defendant's unlawful, unfair and fraudulent business practices;

D.     Ordering payment of damages as permitted by law, including actual, compensatory, statutory, and punitive damages, to the full extent permitted by law;

E.     Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

F.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

G.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts

awarded; and

H.  Ordering such other and further relief as may be just and proper.

## **<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demand a trial by jury of all claims in this Complaint so triable.

DATED: July 19, 2021

By:  */s/ Tim E. Dollar*
      Tim E. Dollar

Tim E. Dollar, Missouri Bar No. 33123
**DOLLAR BURNS BECKER**
  **& HERSHEWE, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 876-2600
Facsimile: (816) 221-8763
Email:  timd@dollar-law.com

19

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

| **Plaintiff(s):** | **Defendant(s):** |
|---|---|
| First Listed Plaintiff: | First Listed Defendant: |
| Patricia Mangels ; | TWININGS NORTH AMERICA, INC. ; |
| 1 Citizen of This State; | 5 Incorporated and Principal Place of Business in Another State; New Jersey |
| **County of Residence:** Cooper County | **County of Residence:** Outside This District |

**County Where Claim For Relief Arose:** Cooper County

| **Plaintiff's Attorney(s):** | **Defendant's Attorney(s):** |
|---|---|
| Tim Dollar (Patricia Mangels) | |
| DOLLAR BURNS BECKER & HERSHEWE, L.C. | |
| 1100 Main Street, Suite 2600 | |
| Kansas City, Missouri 64105 | |
| **Phone:** 8168762600 | |
| **Fax:** 8162218763 | |
| **Email:** timd@dollar-law.com | |

**Basis of Jurisdiction:** 4. Diversity of Citizenship

**Citizenship of Principal Parties** (Diversity Cases Only)

    **Plaintiff:** 1 Citizen of This State

    **Defendant:** 5 Incorporated and Principal Place of Business in Another State

**Origin:** 1. Original Proceeding

**Nature of Suit:** 370 Fraud Actions

**Cause of Action:** 28 U.S.C. § 1332(d)(2), Violation of Missouri's Merchandising Practices Act, Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Common Law Fraud, and Unjust Enrichment/Quasi Contract

**Requested in Complaint**

    **Class Action:** Class Action Under FRCP23

    **Monetary Demand (in Thousands):** >5,000,000

    **Jury Demand:** Yes

**Related Cases:** Is NOT a refiling of a previously dismissed action

**Signature:** Tim Dollar

**Date:** 07/19/2021

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.