# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

PATRICIA MANGELS, TOBIE PATE, and
MARGARET VALDESPINO on behalf of
herself and all others similarly situated,

        Plaintiff,

    vs.

TWININGS NORTH AMERICA, INC.,

        Defendant.

Civil Action No.: 2:21-cv-04138-NKL

**FIRST AMENDED CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

**COME NOW**, Plaintiffs Tobie Pate, Margaret Valdespino, and Patricia Mangels ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this First Amended Class Action Complaint against Defendant Twinings North America, Inc. ("Defendant" or "Twinings"). Plaintiffs make the following allegations upon personal knowledge as to her own acts and experiences, and upon information and belief and the investigation of counsel as to all other matters.

## INTRODUCTION

1.    This is a consumer protection class action arising out of Defendant's false and misleading advertising of its Twinings bagged tea products (the "Products").[1]

2.    During the relevant class period, Defendant, directly and/or through its agents, has manufactured, packaged, and sold the Products. The Products are sold through third party retailers such as CVS, grocery stores, and Amazon.com.

3.    During the relevant class period, Defendant has sold the Products with representations that indicate the Products are manufactured in England. Each of the Products bear three, identical representations: (1) the "Twinings of London" brand name; (2) the following

---

[1] The Products are more fully defined in Paragraph 21.

address in London, England: "216 The Strand, London WC2, England"; and (3) the following representation above the Twinings of London brand name: "By Appointment To Her Majesty Queen Elizabeth II Tea and Coffee Merchants R. Twining and Company Limited, London" (collectively, the "England Representations").

4. Based on the England Representations, reasonable consumers of the Products, including Plaintiffs, believed that the Products are manufactured in England. However, unbeknownst to those consumers, the Products are not manufactured in England. Defendant's packaging of the Products is therefore false and misleading.

5. Defendant's conduct harms consumers by inducing them to purchase the Products at a price premium on the false premise that the Products are manufactured in England.

6. Plaintiffs and other consumers would not have otherwise purchased the Products or would have paid substantially less for them had they known the truth.

7. As a result of Defendant's false and deceptive packaging, Plaintiffs and other members of the proposed Class have purchased Products they otherwise would not have purchased or have paid more for the Products than they otherwise would have paid. Therefore, Plaintiffs and other members of the Class have been injured.

8. Plaintiffs now bring this action individually and on behalf of the members of the proposed Class (defined *infra*) to stop Defendant's unlawful practices, to seek injunctive relief, and for such monetary relief and additional relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

9. The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, this is a class action in which there are more than 100 Class members, and at least some Class members

are citizens of states different from Defendant.

10.    This Court has personal jurisdiction over Defendant because Defendant intentionally avails itself of the markets in Missouri through the promotion, marketing, and sale of the Products in Missouri to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)(1) because a substantial part of the events and omissions giving rise to these claims occurred in this District. Plaintiff Mangels resides, and purchased the Products, in this District.

## PARTIES

12.    Plaintiff Patricia Mangels is a citizen of the State of Missouri, and at all times relevant to this action, resided in Bunceton, Missouri. In or around January 2021, Ms. Mangels purchased the Twinings Earl Grey Product from a Walmart in Boonville, Missouri. In purchasing the Product, Ms. Mangels saw and relied on the England Representations on the Product's front packaging, reasonably expecting that the Product was manufactured in England. Had Ms. Mangels known that the Product was not manufactured in England, she would not have purchased it or would have paid significantly less for it. Therefore, as a direct result of Defendant's false and deceptive conduct, Ms. Mangels suffered injury-in-fact and lost money.

13.    Plaintiff Margaret Valdespino is a citizen of the State of California, and at all times relevant to this action, resided in Irvine, California. In or around October 2020, Ms. Valdespino purchased the Twinings English Breakfast Product from a Ralphs market in Irvine, California. In purchasing the Product, Ms. Valdespino saw and relied on the England Representations on the Product's front packaging, reasonably expecting that the Product was manufactured in England. Had Ms. Valdespino known that the Product was not manufactured in England, she would not have

purchased it or would have paid significantly less for it. Therefore, as a direct result of Defendant's false and deceptive conduct, Ms. Valdespino suffered injury-in-fact and lost money.

14.     Plaintiff Tobie Pate is a citizen of the State of California, and at all times relevant to this action, resided in Irvine, California. Between the dates of February and May 2021, Ms. Pate purchased the Twinings Irish Breakfast, Prince of Wales, English Breakfast, and Earl Grey Products from a Vons store in Escondido, California. In purchasing the Products, Ms. Pate saw and relied on the England Representations on the Products' front packaging, reasonably expecting that the Products were manufactured in England. Had Ms. Pate known that the Products were not manufactured in England, she would not have purchased them or would have paid significantly less for them. Therefore, as a direct result of Defendant's false and deceptive conduct, Ms. Pate suffered injury-in-fact and lost money.

15.     Despite being misled by Defendant, Plaintiffs wish to and are likely to continue purchasing the Products in the future. Although Plaintiffs would like to purchase the Products, absent an injunction prohibiting the deceptive packaging and advertising described herein, they will be unable to rely with confidence on Defendant's packaging of the Products in the future and will therefore abstain from purchasing the Products, even though they would like to purchase them and visit stores which carry the Products. Furthermore, while Plaintiffs currently believe the Products are not manufactured in England, they lack personal knowledge as to Defendant's specific business practices, leaving doubt in their mind as to the possibility that at some point in the future the Products could be manufactured in England. This uncertainty, coupled with their desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the misleading representations alleged herein. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly,

believing that they are manufactured in England when they are not. Thus, monetary damages alone are insufficient to remedy the harm in this action.

16.     Defendant Twinings North America, Inc. is a Delaware corporation headquartered in Clifton, New Jersey. Defendant, directly and/or through its agents, is responsible for the formulation, manufacturing, brewing, packaging, marketing, distributing, and sale of the Products nationwide, including in Missouri.

## FACTUAL ALLEGATIONS

**A.     England Is Renowned For Their Expertise In Tea, Which Twinings Exploits**

17.     There is a strong connection between England and tea.

18.     Historical events such as the London Tea Auction, which served as the "centre of the world's tea industry" synonymized England with expertise in tea manufacturing.[2]

19.     Consumers today still demand British tea. "Such is the British enthusiasm for tea that even after the dismantling of the Empire, British companies continue to play a leading role in the world's tea trade and British brands dominate the world market."[3]

20.     Twinings is one of these brands which dominates the world market. While Twinings was founded in London in 1706, the tea is no longer manufactured in England. Rather, while British consumers can continue to enjoy Twinings tea manufactured in England (Twinings maintains a British factory for the British market), Twinings tea sold outside of England is now manufactured in China and Poland.[4]

21.     Despite the tea no longer being manufactured in England, Twinings continues to

---

[2] UK Tea & Infusions, *The History of Tea*, https://www.tea.co.uk/history-of-tea (last visited September 22, 2021).
[3] *Id.*
[4] Julia Finch, *Twinings Axes 400 Jobs*,
https://www.theguardian.com/business/2009/nov/03/twinings-tea-job-cuts (last visited September 22, 2021).

capitalize on its English association by prominently advertising the England Representations on each of the Products.[5]

22.    An example of Twinings Earl Grey Product, including the England Representations, is portrayed below:



---
[5] The "Products" include all Twinings packaged tea bag products and expressly exclude Twinings Loose Leaf tea and Twinings Cold Infuse Flavoured Cold Water Enhancer products.



23.     As demonstrated above, Defendant prominently displays the following representations on the front packaging of all the Products: (1) the "Twinings of London" brand name; (2) the following address in London, England: "216 The Strand, London WC2, England"; and (3) the following representation above the Twinings of London brand name: "By Appointment To Her Majesty Queen Elizabeth II Tea and Coffee Merchants R. Twining and Company Limited, London". These representations, individually and in their totality, communicate a specific message to consumers: The Products are manufactured in England.

24.     The Products are deceptively advertised with the England Representations to target consumers who are interested in purchasing teas manufactured in England.

25.     Based on the England Representations, Plaintiffs reasonably believed the Products were manufactured in England, but they were not.

26.     Plaintiffs would not have purchased the Products, or would have paid less for the Products, had they known they were not manufactured in England.

27.     The Product that Plaintiffs received were worth less than the Product for which she paid given their false and misleading misrepresentations.

**B.     Plaintiffs and Class Members Were Deceived and Injured**

28.     Plaintiffs and other Class members have been, and will continue to be, deceived or misled by Defendant's false and deceptive packaging of the Products.

29.     Plaintiffs and other Class members purchased, and paid a premium for, the Products based on the England Representations, reasonably believing that the Products are manufactured in England.

30.     Reasonable consumers did not know, and had no reason to know, that the Products were, and continue to be, falsely and deceptively packaged.

31.     As a result of the foregoing, reasonable consumers would expect that the Products were manufactured in England.

32.     The false belief created by Defendant's Products' packaging is a material factor in influencing consumer purchase decisions because it relates to the contents of the Products, specifically the geographical location where they were made. To the detriment of consumers, Defendant's packaging entices consumers to pay for what they believe is tea manufactured in England.

33.     As the entity responsible for the development, manufacturing, processing, advertising, and sale of the Products, Defendant knew that the Products were not manufactured in England, but nevertheless intentionally maintained the England Representations on the Products.

34.     Defendant knew or should have known that Plaintiffs and other consumers, in purchasing the Products, would rely on the England Representations and would therefore reasonably believe that the Products were manufactured in England.

35.     Had Plaintiffs and the Class members known the truth about the Products, they

would not have purchased the Products, or would not have paid the prices they paid for the Products.

36.     Plaintiffs and Class members were all harmed by purchasing Defendant's Products because they did not receive what they paid for, and, as a result, lost money and property.

37.     Each Class member has been exposed to the same or substantially similar deceptive practice, as each of the Products sold during the class periods were advertised with the England Representations on their front packaging.

## CLASS ACTION ALLEGATIONS

38.     Plaintiffs, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (b)(3), bring this action on behalf of the following (the "Classes"):

    a.     The "**California Subclass**": All persons who, within the relevant statute of limitations period, purchased any of the Products in the state of California.

    b.     The "**California Consumer Subclass**": All persons who, within the relevant statute of limitations period, purchased any of the Products for personal, family, or household purposes in the state of California.

    c.     The "**Missouri Subclass**": All persons who, within the relevant statute of limitations period, purchased any of the Products for personal, family, or household purposes in the state of Missouri.

39.     Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors; all persons who make a timely election to be excluded from the Class; the judge to whom this case is assigned and any immediate family members thereof; and any persons who assert claims for personal injury.

40.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class after having had an opportunity to conduct discovery.

41.     Plaintiffs Pate and Valdespino are members of the California Subclass and

California Consumer Subclass.

42. Plaintiff Mangels is a member of the Missouri Subclass.

43. **Numerosity.** The members of the Classes are so numerous that individual joinder of all Class members is impracticable. Defendant has sold at least thousands of packages of the Products to Class members. There are likely at least thousands of Class members.

44. **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

      a. Whether the representations discussed herein that Defendant made about the Products were or are false, misleading, or likely to deceive a reasonable consumer;

      b. Whether the representations discussed herein were material to a reasonable consumer;

      c. Whether Defendant's conduct violates public policy;

      d. Whether Defendant's conduct constitutes violations of the laws and/or regulations asserted herein;

      e. Whether Plaintiffs and the other Class members have been injured and the proper measure of their losses as a result of those injuries; and

      f. Whether Plaintiffs and the other Class members are entitled to injunctive, declaratory, or other equitable relief.

45. **Typicality.** Plaintiffs' claims are typical of those of the other Class members because, among other things, Plaintiffs and all Class members were injured in a similar manner through the uniform conduct by Defendant described herein.

46.     **Adequacy of Representation.** Plaintiffs are adequate representatives of the Classes because Plaintiffs' interests do not conflict with the interests of the other Class members Plaintiffs seek to represent. In addition, Plaintiffs have retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of the Class, and the interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

47.     **Declaratory and Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

48.     **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### Violation of Missouri's Merchandising Practices Act ("MMPA")
### (*on behalf of the Missouri Subclass*)

49.     Plaintiff Mangels re-alleges and incorporates Paragraphs 1-48 as if fully set forth herein.

50.     Plaintiff Mangels brings this claim individually and on behalf of the Missouri Subclass.

51.     The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." Mo. Rev. Stat. § 407.020.1.

52.     The Products are "merchandise" pursuant to Mo. Rev. Stat. § 407.010(4), and Defendant is selling the Products in trade or commerce.

53.     As demonstrated above, Defendant's packaging and advertising constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices in connection with the sale or advertisement of the Products in that Defendant falsely and deceptively advertised the Products in a manner which misleads reasonable consumers into believing the Products are manufactured in England, when they are not.

54.     Defendant's misrepresentations regarding the Products are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the contents of the Products, specifically the geographical location where they are made.

55.     At all relevant times, Defendant knew or reasonably should have known the fact that the Products were not manufactured in England, and that Plaintiff Mangels and other members

of the Missouri Subclass would reasonably and justifiably rely on the England Representations in purchasing the Products.

56.     Plaintiff Mangels and other members of the Missouri Subclass purchased the Products for personal, family, or household purposes.

57.     Plaintiff Mangels and other members of the Missouri Subclass reasonably and justifiably relied on Defendant's misleading and fraudulent packaging of the Products when purchasing them.

58.     Plaintiff Mangels and other members of the Missouri Subclass have suffered an ascertainable loss caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products, had they known that Defendant's conduct was misleading and fraudulent.

59.     Defendant's conduct was intentional, wrongful, and malicious and entitles Plaintiff Mangels and other members of the Missouri Subclass to the recovery of punitive damages as authorized by statute. Mo. Rev. Stat. § 407.025.1.54.

60.     In addition, Defendant's conduct has caused Plaintiff Mangels and other members of the Missouri Subclass irreparable injury.  As described herein, Defendant has engaged in unlawful and misleading conduct on a routine and automated basis, harming Class members in a uniform manner.  Unless restrained and enjoined, Defendant will continue such conduct. Therefore, Plaintiff Mangels and other members of the Missouri Subclass request injunctive relief, and such other equitable relief as the Court deems just and proper.

**COUNT II**
**Breach of Express Warranty**
**Mo. Stat. § 400.2-313**
(***on behalf of the Missouri Subclass***)

61.     Plaintiff Mangels re-alleges and incorporates Paragraphs 1-48 as if fully set forth

herein.

62.     Plaintiff Mangels brings this claim individually and on behalf of the Missouri Subclass.

63.     Missouri's express warranty statute provide that: "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Mo. Stat. § 400.2-313.

64.     Plaintiff Mangels and members of Missouri Subclass formed a contract with Defendant at the time they purchased the Products. Defendant has placed the England Representations on each of the Products' packaging, expressly warranting that the Products are made in England. These representations: (1) are affirmations of fact or promises made by Defendant to consumers that the Products are made in England; (2) became part of the basis of the bargain to purchase the Products when Plaintiff Mangels and other Missouri Subclass members relied on the representations; and (3) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created express warranties that the Products would conform to the product descriptions.

65.     Plaintiff Mangels and members of Missouri Subclass reasonably and justifiably relied on the foregoing express warranties, believing that Products did in fact conform to the warranties.

66.     All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff Mangels and members of Missouri Subclass.

67.     Defendant has breached the express warranties made to Plaintiff and members of Missouri Subclass by failing to provide Products manufactured in England.

68.     Plaintiff Mangels and members of Missouri Subclass paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of Missouri Subclass had known of the true nature of the Products, they would not have purchased them or would have paid significantly less for them.

69.     Defendant received notice that its conduct outlined herein breached its express warranties to consumers in a notice letter received by Defendant on July 14, 2021.

70.     As a result of Defendant's breach of express warranties, Plaintiff Mangels and members of Missouri Subclass suffered injury and deserve to recover all damages afforded under the law.

<u>**COUNT III**</u>
**Breach of Implied Warranty of Merchantability**
**Mo. Stat. § 400.2-314**
(*on behalf of the Missouri Subclass*)

71.     Plaintiff Mangels re-alleges and incorporates Paragraphs 1-48 as if fully set forth herein.

72.     Plaintiff Mangels brings this claim individually and on behalf of the Missouri Subclass.

73.     Missouri's implied warranty law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mo. Stat. § 400.2-314(1).

74.     Missouri's implied warranty law also states that "[g]oods to be merchantable must

be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Mo. Stat. § 400.2-314(2)(f).

75.    Defendant is a merchant with respect to the sale of packaged tea products, including the Products at issue here. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to Missouri Subclass members.

76.    By advertising the Products with their current containers (packaging), which include the England Representations on the front portion of each Products' package, Defendant made an implied promise that each of the Products are manufactured in England. By not providing Products manufactured in England, Defendant has not "conformed to the promises . . . made on the container" of the Products. Plaintiff and members of the Missouri Subclass did not receive the goods as impliedly warranted by Defendant to be merchantable.

77.    Therefore, the Products are not merchantable under the law and Defendant has breached its implied warranty of merchantability in regard to the Products.

78.    If Plaintiff Mangels and other members of the Missouri Subclass had known of the true nature of the Products, they would not have purchased them or would have paid significantly less for them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff Mangels and other members of the Missouri Subclass have suffered injury and deserve to recover all damages afforded under the law.

<u>**COUNT IV**</u>
**Breach of Express Warranty**
**California Commercial Code § 2313**
(***on behalf of the California Subclass and the California Consumer Subclass***)

79.    Plaintiffs Pate and Valdespino re-allege and incorporate Paragraphs 1-48 as if fully set forth herein.

80.    Plaintiffs Pate and Valdespino bring this claim individually and on behalf of the

16

members of the proposed California Subclass and California Consumer Subclass against Defendant.

81.     California Commercial Code § 2313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  Cal. Com. Code § 2313.

82.     Defendant has expressly warranted on the packaging of the Products that the Products are manufactured in England. The England Representations on the Products' packaging: (1) are affirmations of fact or promises made by Defendant to consumers that the Products are made in England; (2) became part of the basis of the bargain to purchase the Products when Plaintiffs Pate and Valdespino relied on the England Representations; and (3) created an express warranty that the Products would conform to these affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

83.     Plaintiffs Pate and Valdespino and members of both the California Subclass and California Consumer Subclass reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to these warranties.

84.     Defendant has breached the express warranties made to Plaintiffs Pate and Valdespino and members of both the California Subclass and California Consumer Subclass by failing to provide consumers with Products manufactured in England.

85.     Plaintiffs Pate and Valdespino and members of both the California Subclass and California Consumer Subclass paid a premium price for the Products but did not obtain the full value of them as represented. If Plaintiffs Pate and Valdespino and members of both the California Subclass and California Consumer Subclass had known of the true nature of the Products, they would not have purchased the Products or would not have been willing to pay the premium price associated with the Products.

86.     Defendant received notice that its conduct outlined herein breached its express warranties to consumers in a notice letter received by Defendant on July 14, 2021.

87.     As a result, Plaintiffs Pate and Valdespino and members of both the California Subclass and California Consumer Subclass suffered injury and deserve to recover all damages afforded under the law.

88.     Within a reasonable amount of time after Plaintiffs Pate and Valdespino discovered that Defendant did in fact breach the express warranty, Plaintiff Buxbaum notified Defendant of the breach.

**COUNT V**
**Breach of Implied Warranty**
**California Commercial Code § 2314**
**(*on behalf of the California Subclass and the California Consumer Subclass*)**

89.     Plaintiffs Pate and Valdespino re-allege and incorporate Paragraphs 1-48 as if fully set forth herein.

90.     Plaintiffs Pate and Valdespino bring this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

91.     California Commercial Code § 2314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect

to goods of that kind." Cal. Com. Code § 2314(1).

92.     California Commercial Code § 2314(2) provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

93.     Defendant is a merchant with respect to the sale of packaged tea products, including the Products at issue here. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

94.     By advertising the Products with their current containers (packaging), which include the England Representations on the front portion of each Products' package, Defendant made an implied promise that each of the Products are manufactured in England. Because the Products are not manufactured in England, Defendant has not "conformed to the promises . . . made on the container" of the Products. Plaintiffs Pate and Valdespino and members of both the California Subclass did not receive the goods as impliedly warranted by Defendant to be merchantable.

95.     Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

96.     If Plaintiffs Pate and Valdespino and members of both the California Subclass and California Consumer Subclass had known that the Products were not manufactured in England, they would not have purchased them or would not have been willing to pay the premium price associated with the Products. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiffs Pate and Valdespino and members of both the California Subclass and California Consumer Subclass have suffered injury and deserve to recover all damages afforded under the law.

# COUNT VI
## Breach of California's Consumers Legal Remedies Act ("CLRA")
## California Civil Code §§ 1750, *et seq.*
## (*on behalf of the California Consumer Subclass*)

97.     Plaintiffs Pate and Valdespino re-allege and incorporate Paragraphs 1-48 as if fully set forth herein.

98.     Plaintiffs Pate and Valdespino bring this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant.

99.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such products by Plaintiffs Pate and Valdespino and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

100.    Cal. Civ. Code § 1770(a)(2) prohibits "misrepresenting the source, sponsorship, approval, or certification of goods or services." By marketing the Product with its current labels, packaging, and advertisements, Defendant has represented and continues to represent that the source of the Product is England, when it is not.  Therefore, Defendant has violated section 1770(a)(2) of the CLRA.

101.    Cal. Civ. Code § 1770(a)(4) prohibits "using deceptive representations or designations of geographical origin in connection with goods or services." By marketing the Product with its current labels, packaging, and advertisements, Defendant has used deceptive representations and designations of the Product's geographical origin (England).  Therefore, Defendant has violated section 1770(a)(4) of the CLRA.

102.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Product with its current labels, packaging, and advertisements, Defendant has represented and continues to represent that the Product has characteristics (that it is

20

made in England) when it does not have such characteristics. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

103.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Product with its current labels, packaging, and advertisements, Defendant has represented and continues to represent that the Product is of a particular style (that it is manufactured in England) when it is of another (it is not made in England). Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

104.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By labeling, packaging, and marketing the Product with references to England so that a reasonable consumer would believe that the Product was made in England, and then intentionally not selling the Product as made in England, Defendant has violated section 1770(a)(9) of the CLRA.

105.    At all relevant times, Defendant has known or reasonably should have known that the Product was not made in England, and that Plaintiffs Pate and Valdespino and other members of the California Consumer Subclass would reasonably and justifiably rely on the labeling in purchasing the Products.

106.    Plaintiffs Pate and Valdespino and members of the California Consumer Subclass have reasonably and justifiably relied on Defendant's misleading, and fraudulent conduct when purchasing the Products. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Product may be presumed or inferred for Plaintiffs Pate and Valdespino and members of California Consumer Subclass.

107.     Plaintiffs Pate and Valdespino and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products had they known that Defendant's conduct was misleading and fraudulent.

108.     Under Cal. Civ. Code § 1780(a), Plaintiffs Pate and Valdespino and members of the California Consumer Subclass are seeking injunctive relief pursuant to the CLRA, preventing Defendant from further wrongful acts and unfair and unlawful business practices, as well as restitution, disgorgement of profits, and any other relief this Court deems proper.

109.     Pursuant to Cal. Civ. Code § 1782, on July 14, 2021, counsel for Plaintiffs Pate and Valdespino mailed a notice and demand letter to Defendant by certified mail, with return receipt requested, indicating Plaintiffs Pate and Valdespino's intent to pursue claims under the CLRA and other violations of the law, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Defendant received the notice and demand letter on July 17, 2021.

110.     Because Defendant has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after it received both the notice and demand letters, Plaintiffs timely filed their complaint against Defendant.

<u>**COUNT VII**</u>
**Violation of California's Unfair Competition Law ("UCL")**
**California Business & Professions Code §§ 17200, *et seq*.**
**(*on behalf of the California Subclass and the California Consumer Subclass*)**

111.     Plaintiffs Pate and Valdespino re-allege and incorporate Paragraphs 1-48 as if fully set forth herein.

112.     Plaintiffs Pate and Valdespino bring this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant.

113.     Cal. Bus. & Prof Code § 17200 provides, in pertinent part, that "unfair competition

22

shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

114.　Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

115.　Defendant's false and misleading advertising of the Products therefore was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), 21 U.S.C.A. § 343(a)(1), and other applicable laws as described herein.

116.　As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiffs Pate and Valdespino, and members of both the California Subclass and California Consumer Subclass.

117.　Under the UCL, a business act or practice is "unfair" if the defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

118.　Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' packaging and marketing. Creating consumer confusion as to the actual location of where the Products are made in is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair."

119.　As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiffs Pate and Valdespino, and members of both the California Subclass and California Consumer Subclass.

120.　Under the UCL, a business act or practice is "fraudulent" if it actually deceives or

is likely to deceive members of the consuming public.

121.     Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are made in England, when they are not. Defendant's conduct is also fraudulent because Defendant fails to disclose that the Products are not made in England in order to induce consumers' purchases of the Products. Because Defendant misled Plaintiffs Pate and Valdespino and members of both the California Subclass and California Consumer Subclass, Defendant's conduct was "fraudulent."

122.     As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiffs Pate and Valdespino, and members of both the California Subclass and California Consumer Subclass.

123.     Plaintiffs Pate and Valdespino request that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiffs Pate and Valdespino, and members of both the California Subclass and California Consumer Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs Pate and Valdespino, and members of both the California Subclass and California Consumer Subclass, may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT VIII
### Violation of California's False Advertising Law ("FAL")
### California Business & Professions Code §§ 17500, *et seq*.
### (*on behalf of the California Subclass*)

124.     Plaintiffs Pate and Valdespino re-allege and incorporate Paragraphs 1-48 as if fully set forth herein.

125.     Plaintiffs Pate and Valdespino bring this claim individually and on behalf of the

members of the proposed California Class against Defendant.

126.    The FAL prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." CAL. BUS. & PROF. CODE § 17500.

127.    As detailed above, Defendant's marketing and sale of the Products to Plaintiffs Pate and Valdespino and other members of the California Class was likely to deceive a reasonable consumer because Defendant's representations were likely to lead a reasonable consumer to believe the Products were manufactured in England, when in fact the Products were not manufactured in England.

128.    In reliance on Defendant's false and misleading representations indicating the Products were made in England, Plaintiffs Pate and Valdespino and the other members of the California Class purchased the Products. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiffs Pate and Valdespino and the members of the California Class.

129.    Defendant knew or should have known that its labeling and marketing of the Products was likely to deceive a reasonable consumer.

130.    Plaintiffs Pate and Valdespino request that this Court cause Defendant to restore this fraudulently obtained money to Plaintiffs Pate and Valdespino and members of the California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs Pate and Valdespino and members of the California Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**Common Law Fraud**
(*on behalf of the Classes*)

131.    Plaintiffs re-allege and incorporate Paragraphs 1-45 as if fully set forth herein.

132.    Plaintiffs bring this claim individually and on behalf of the Classes.

133.    Defendant has willfully, falsely, and knowingly packaged the Products with the England Representations, informing consumers that the Products are manufactured in England. Despite this, however, the Products are not manufactured in England. Therefore, Defendant has made intentional misrepresentations as to the Products.

134.    Defendant's misrepresentations are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the contents of the Products, specifically the geographical location where they are manufactured in.

135.    Defendant knew or recklessly disregarded the fact that the Products are not manufactured in England.

136.    Defendant intended that Plaintiffs and other consumers rely on the misleading representations, as the representations are made conspicuously on the front of the packaging of each of the Products.

137.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

138.    Therefore, as a direct and proximate result of Defendant's fraud, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages,

including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## COUNT X
### Unjust Enrichment/Quasi-Contract
### (*on behalf of the Classes*)

139.    Plaintiffs re-allege and incorporate Paragraphs 1-48 as if fully set forth herein.

140.    Plaintiffs bring this claim individually and on behalf of the Classes.

141.    At all times relevant hereto, Defendant deceptively marketed, advertised, and sold the Products to Plaintiffs and the members of the Classes in a manner which misleads consumers into believing the Products are manufactured in England when they are not.

142.    Plaintiffs and members of the Classes conferred upon Defendant non-gratuitous payments for the Products that they would not have if not for Defendant's deceptive packaging of the Products. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Classes, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs and members of the Classes were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

143.    Defendant has been unjustly enriched in retaining the revenues derived from purchases of the Products by Plaintiffs and members of the Classes. Defendant's retention of that benefit under these circumstances is unjust and inequitable because Defendant misrepresented, among other things, that its Products possessed a characteristic that the Products did not, in fact, possess. Defendant's misrepresentations caused injuries to Plaintiffs and members of the Classes because they paid a price premium due to the misleading advertising.

144.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and

members of the Classes under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiffs and members of the Classes for unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the proposed Classes, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Certifying the Classes as requested herein, designating Plaintiffs as the class representatives and appointing the undersigned counsel as class counsel;

B. Declaring that Defendant is financially responsible for notifying the members of the Classes the pendency of this suit;

C. Ordering restitution and disgorgement of all profits and unjust enrichment Defendant obtained from Plaintiffs and the Class as a result of Defendant's unlawful, unfair and fraudulent business practices;

D. Ordering payment of damages as permitted by law, including actual, compensatory, statutory, and punitive damages, to the full extent permitted by law;

E. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

F. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

G. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.


DATED: September 24, 2021

By:   */s/ Tim E. Dollar*
      Tim E. Dollar

Tim E. Dollar, Missouri Bar No. 33123
**DOLLAR BURNS BECKER & HERSHEWE, L.C.**
1100 Main Street, Suite 2600
Kansas City, MO 64105
Telephone: (816) 876-2600
Facsimile: (816) 221-8763
Email:  timd@dollar-law.com

Benjamin Heikali
*pro hac vice*
Joshua Nassir
*pro hac vice*
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
bheikali@faruqilaw.com
jnassir@faruqilaw.com

Timothy J. Peter
*pro hac vice*
**FARUQI & FARUQI, LLP**
1617 JFK Boulevard, Suite 1550 Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
tpeter@faruqilaw.com

*Attorneys for Plaintiffs*